UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |   |
|---|---|---|
| JOSE RENAN MARTINEZ MATUTE, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 18-1926 (RMC) |
| CNN CONSTRUCTION INC., *et al.*, | ) ) ) | |
| Defendants. | ) ) ) | |

MEMORANDUM OPINION

Jose Renan Martinez Matute complains that Defendants CNN Construction, Inc. (CNN) and Ali Shahparvari, CNN's owner and operator, failed to compensate him for overtime work that he performed on construction and remodeling projects in Maryland and the District of Columbia. Mr. Martinez Matute seeks unpaid wages and damages under the federal Fair Labor Standards Act and under Maryland and D.C. law. Before the Court is Defendants' motion for summary judgment.

I. FACTS

The Complaint in this matter was filed on August 16, 2018. Count I alleges a violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*; Count II alleges a violation of the D.C. Minimum Wage Revision Act (DCMWRA), D.C. Code § 32-1001 *et seq.*; Count III alleges a violation of the Maryland Wage and Hour Law (MWHL), Md. Code Ann., Lab & Empl. § 3-401 *et seq*; and Count IV alleges a violation of the Maryland Wage Payment and Collection Law (MWPCL), Md. Code Ann., Lab. & Empl. § 3-501 *et seq.* Mr. Martinez Matute, a Maryland resident, worked for CNN, located in Rockville, Maryland, from

approximately May 2006 until June 2017. Compl. [Dkt. 1] ¶ 12. During his employment Plaintiff worked primarily on residential remodeling projects throughout Maryland and the District of Columbia. He seeks overtime pay from Defendants "only during a three-year lookback period, from August 16, 2018 to August 16, 2015." Joint Stipulation [Dkt. 13].[1]

Defendants filed their Answer on November 2, 2018. The Court held an initial scheduling conference on December 18, 2018 and set deadlines for discovery and dispositive motions. Defendants' motion for summary judgment is ripe for review.[2]

## II. JURISDICTION

The Court has jurisdiction over Count I, alleging that Defendants violated the federal FLSA under 28 U.S.C. § 1331, which grants jurisdiction to federal district courts over "all civil actions arising under the Constitution, laws or treaties of the United States." When a district court has original jurisdiction over a claim, it has "supplemental jurisdiction over all other claims that are so related to [those] claims . . . that they form part of the same case or controversy." 28 U.S.C. § 1367(a). Claims are from the same "case or controversy" when they "'derive from a common nucleus of operative fact,'" such that the plaintiff would "'ordinarily be expected to try them all in one judicial proceeding.'" *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 580 (2005) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)). If the supplemental claims arise from the same case or controversy, a federal court decides whether to exercise its discretion to assert jurisdiction over the remaining claims by

---

[1] Plaintiff's employment ended at CNN in approximately June 2017. Compl. ¶ 12. It is unclear why Plaintiff seeks damages through August 16, 2018.

[2] *See* Defs.' Mot for Summ. J. (Mot.) [Dkt. 14]; Pl.'s Opp'n to Defs.' Mot. for Summ. J. (Opp'n) [Dkt. 15]; Defs.' Reply in Supp. of Mot. for Summ. J. (Reply) [Dkt. 16].

considering whether judicial economy, convenience, and fairness to litigants favor federal litigation. *Osborn v. Haley*, 549 U.S. 225, 245 (2007) (citing *Gibbs*, 383 U.S. at 726).

Here, the allegations underlying the remaining state law claims derive from the same set of facts concerning Plaintiff's overtime work for CNN. Thus, the Court's exercise of supplemental jurisdiction over the remaining counts is appropriate.[3]

### III. LEGAL STANDARDS

**A. Motion for Summary Judgment**

Rule 56 of the Federal Rules of Civil Procedure states that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A fact is "material" if it is capable of affecting the substantive outcome of litigation. *Anderson*, 477 U.S. at 248. A dispute is "genuine" if there is sufficient admissible evidence such that a reasonable jury could return a verdict for a non-moving party. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

Summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In ruling on a motion for summary judgment, a court must draw all justifiable inferences in the nonmoving party's favor. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of

---

[3] Defendants do not contest that they are subject to personal jurisdiction in the District of Columbia. In addition, venue is proper in the District of Columbia because a substantial part of the events at issue occurred in D.C., as Plaintiff claims that he spent more than 50% of his time working on remodeling projects in D.C. *See* 28 U.S.C. § 1391(b)(2).

a scintilla of evidence" in support of its position. *Id*. at 252. The nonmoving party must point to specific facts showing that a genuine issue of material fact requires trial. *Celotex*, 477 U.S. at 324. The nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Id*. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50.

B. **Fair Labor Standards Act**

"Under the FLSA an employee is ordinarily entitled to pay equal to one and one-half times his normal hourly wage for all hours worked beyond forty per week." *Robinson-Smith v. Gov't Emps. Ins. Co.*, 590 F.3d 886, 892 (D.C. Cir. 2010) (citing 29 U.S.C. § 207(a)(1)).[4] "FLSA coverage comes in two forms: 'enterprise' and 'individual.'" *Benton v. Laborers' Joint Training Fund*, 121 F. Supp. 3d 41, 49 (D.D.C. 2015) (*Benton I*) (citing *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 295 n.10 (1985)). To establish enterprise coverage, "an employee must first show that the employer is an 'enterprise,' and then show that the enterprise is 'engaged in commerce.'" *Id*. (citing *Malloy v. Ass'n of State & Territorial Solid Waste Mgmt. Officials*, 955 F. Supp. 2d 50, 55 (D.D.C. 2013)).[5] To establish individual coverage, an employee must show that he personally "engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 207(a)(1).

---

[4] The FLSA states that "no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation" at a rate equal to one and one-half times his normal hourly wage for such hours. 29 U.S.C. § 207(a)(1).

[5] A covered enterprise must have an "annual gross volume of sales made or business done" that is at least $500,000. 29 U.S.C. § 203(s)(1)(A)(ii).

A plaintiff may attempt to show that he is individually covered under the FLSA in several ways, "including by showing that she is employed in industries that 'serve as the actual instrumentalities and channels of interstate and foreign commerce,' such as the telephone, transportation, or shipping industries; by showing that she is employed in a type of business that 'regularly utilize[s] the channels of interstate and foreign commerce in the course of their operations,' such as the banking, insurance, or publishing industries; or by showing that she directly participates in the actual movement of people or goods in interstate commerce." *Benton v. Laborers' Joint Training Fund*, 210 F. Supp. 3d 99, 106 (D.D.C. 2016) (*Benton III*) (citing 29 C.F.R. §§ 776.10, 776.11; *Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006)).

## IV. ANALYSIS

### A. Overtime Coverage Under FLSA

The parties have stipulated that Defendants do not constitute an "enterprise engaged in commerce or in the production of goods for commerce," *see* 29 U.S.C. § 207(a)(1), and, therefore, that there is no "enterprise coverage" under the FLSA. Joint Stipulation.[6] Because there is no enterprise coverage, the case turns on whether Plaintiff has alleged facts to support individual coverage by the FLSA, that is, whether he was personally "engaged in commerce or in the production of goods for commerce" during his time of employment with CNN. *See* 29 U.S.C. § 207(a)(1).

The Complaint alleges that Plaintiff was covered by the FLSA when he worked for CNN because he "was an employee who, while engaged in employment duties, handled, and

---

[6] The Court observes that Plaintiff's Complaint alleges that CNN *is* an "enterprise" within the meaning of the FLSA. Compl. ¶ 5. However, as evidenced by the Joint Stipulation, Plaintiff has since conceded that CNN is not an "enterprise" under the FLSA.

5

otherwise worked on goods and materials (namely building materials and tools) that were moved in or produced for commerce." Compl. ¶ 6. That is, the Complaint alleges that Plaintiff "engaged in commerce" by handling and working with building materials and tools that had themselves traveled in interstate commerce.[7]

Defendants argue that Plaintiff did not "engage in commerce" merely by handling goods and materials that moved in commerce. Defendants note that Plaintiff testified in deposition that he regularly purchased supplies at Home Depot for his employer. *See* Ex. 1., Opp'n, Martinez Matute Dep. Tr. [Dkt. 15-2] at 39:9-40:5. Plaintiff testified that he paid cash for these Home Depot purchases and was reimbursed by CNN. Defendants argue that Plaintiff's Home Depot purchases are insufficient to trigger FLSA coverage because local purchases from a merchant do not constitute interstate commerce. *See McLeod v. Threlkeld*, 319 U.S. 491, 494 (1943) (stating that "employees who handle goods after acquisition by a merchant for general local disposition are not [engaged in commerce]"); *Thorne*, 448 F.3d at 1266-68 (holding that an employee's purchases of goods and materials for work using an employer's credit card did not show that the employee was "engaged in commerce").

Defendants further observe that the Complaint does not allege any additional grounds for individual coverage under the FLSA. They emphasize that Plaintiff "does not allege that he himself regularly and customarily crossed state lines like the plaintiff did in . . . *Benton III*." Mot. at 9 n.1. In *Benton III*, the plaintiff was the director of a labor training organization based in D.C., but alleged that she frequently traveled to a satellite training center in Virginia; on

---

[7] Under the FLSA, an employee is individually covered if he either "engaged in commerce" or "engaged in the production of goods for commerce." *See* 29 U.S.C. § 207(a)(1). Here, "[t]he parties do not dispute that [Plaintiff has] not been 'engaged in the production of goods for commerce,' and so, the issue of individual coverage turns on whether [Plaintiff was] 'engaged in commerce.'" *Bowrin v. Catholic Guardian Soc'y*, 417 F. Supp. 2d 449, 465 (S.D.N.Y. 2006).

6

this basis, the court denied summary judgment for defendants. *Benton III*, 210 F. Supp. at 109-10; *see also Benton I*, 121 F. Supp. 3d at 53-54 (dismissing FLSA claim because plaintiff failed to plead any grounds for individual coverage and failed to establish enterprise coverage); *Benton v. Laborers' Joint Training Fund*, No. 14-cv-1073 (RC), 2015 WL 7737304, at *1-2 (D.D.C. Dec. 1, 2015) (*Benton II*) (granting plaintiff's motion for leave to file a first amended complaint that added a specific claim of individual coverage based on plaintiff's own interstate travel).

Plaintiff responds that his regular trips to Home Depot to purchase supplies were not his *only* interactions with interstate commerce. Rather, he argues that he "was regularly engaged in interstate commerce by virtue of the fact that he worked in the District of Columbia and the State of Maryland throughout his employment." Opp'n at 2. Plaintiff asserts that "[i]n the performance of his job duties, [he] was frequently required to utilize CNN's company van to transport himself, his co-workers, tools, and materials from Defendant Shahparvari's home in Maryland to various jobsites throughout the District of Columbia." *Id.* Therefore, Plaintiff argues, his "out of state travel brings him within the FLSA's individual coverage because he travelled out of state regularly and frequently." *Id.* at 5.

Plaintiff contends that the Complaint pleads sufficient facts to allege FLSA coverage based on his interstate travel. The Complaint alleges that "Defendants employed Plaintiff to perform construction and remodeling work in the District of Columbia and the State of Maryland" and that "Plaintiff spent more than 50% of his time working in the District of Columbia." Compl. ¶¶ 4, 9. The Complaint also alleges wage claims under D.C. and Maryland law.

The Reply argues that Plaintiff failed to respond to its arguments contesting the only theory of FLSA coverage it alleged, namely that Plaintiff handled materials and tools that

7

moved in commerce. *See* Compl. ¶ 6. Defendants note that Plaintiff only raised his new theory of interstate travel in his Opposition. Moreover, Defendants argue that Plaintiff's new theory is without merit because Plaintiff has alleged only that he *commuted* across state lines to perform construction and remodeling work. Defendants maintain that commuting is insufficient to invoke the FLSA. *See Benton III*, 210 F. Supp. 3d at 106-07 (observing that the FLSA regulations provide that "[e]mployees who regularly travel 'across State lines in the performance of their duties'" must be distinguished from employees who "'merely go[] to and from their homes or lodgings in commuting to a work place'" (citing 29 C.F.R. § 776.12)).

Without doubt, the Opposition fails to speak to Defendants' argument that Plaintiff's handling of materials that traveled in commerce is insufficient to invoke the FLSA. "The Supreme Court has articulated that it is the intent of Congress to regulate only activities constituting interstate commerce, not activities merely affecting commerce." *Thorne*, 448 F.3d at 1266 (citing *McLeod*, 319 U.S. at 497). "For an employee to be 'engaged in commerce' under the FLSA, he must be directly participating in the actual movement of persons or things in interstate commerce by (i) working for an instrumentality of interstate commerce, *e.g.*, transportation or communication industry employees, or (ii) by regularly using the instrumentalities of interstate commerce in his work, *e.g.*, regular and recurrent use of interstate telephone, telegraph, mails, or travel." *Id.* (citing 29 C.F.R. §§ 776.23(d)(2), 776.24). By his silence, Plaintiff has conceded that his mere handling of materials that had traveled in interstate commerce is insufficient to trigger coverage under the FLSA. "It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to

address as conceded." *Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003).

Plaintiff's argument about his own interstate travel requires further consideration. "The FLSA's implementing regulations explain that travel across state lines can, in some circumstances, establish individual FLSA coverage." *Benton III*, 210 F. Supp. 3d at 106 (citing 29 C.F.R. § 776.12). The regulation cites typical examples of employment that involve interstate travel, including "traveling service men, traveling buyers, *traveling construction crews*, collectors, and employees of such organizations as circuses, carnivals, road shows, and orchestras." 29 C.F.R. § 776.12 (emphasis added). The regulation states that "[t]he area of coverage in such situations cannot be delimited by any exact formula, since questions of degree are necessarily involved." *Id.*

It is clear that employees who "transport[] material or equipment or other persons across State lines or within a particular State as part of an interstate movement . . . [are] engaging in commerce." *Id.* In addition, "as a general rule, employees who are regularly engaged in traveling across State lines in the performance of their duties (as distinguished from merely going to and from their homes or lodgings in commuting to a work place) are engaged in commerce and covered by the [FLSA]." *Id.* However, "an employee who, in isolated or sporadic instances, happens to cross a State line in the course of his employment, which is otherwise intrastate in character, is not, for that sole reason, covered by the Act." *Id.* "Doubtful questions arising in the area between the two extremes must be resolved on the basis of the facts in each individual case." *Id.*

Plaintiff argues that the Complaint establishes individual FLSA coverage based on interstate travel because it alleges that he performed construction and remodeling work in

9

D.C. and Maryland and spent more than 50% of his time working in D.C. However, "[t]he salient question is whether the employee travels across state lines '*in the performance of* [his] duties.'" *Benton III*, 210 F. Supp. 3d at 110 (citing 29 C.F.R. § 776.12) (emphasis in original)). The Complaint does not allege any facts that show that Plaintiff traveled across state lines in the performance of his duties. Rather, its allegations only support an inference that Plaintiff regularly commuted from his home to D.C. to perform construction and remodeling work. But commuting is insufficient to invoke coverage under the FLSA. *See* 29 C.F.R. § 776.12.

The only facts supporting Plaintiff's interstate travel are contained in his Opposition and attached exhibits. Plaintiff asserts that he "was frequently required to utilize CNN's company van to transport himself, his co-workers, tools and materials from Defendant Shahparvari's home in Maryland to various jobsites throughout the District of Columbia." Opp'n at 2. He maintains that he "was required to begin each workday by picking up CNN's company van from Shahparvari's home in Rockville, Maryland," and "was typically required to return the van at the end of each workday," except occasional nights where he drove the van home because he worked late. *Id.* at 3; Ex. 2, Opp'n, Decl. of Jose Renan Martinez Matute (Martinez Matute Decl.) [Dkt. 15-3] at 2. Plaintiff states that "[p]rior to picking up the van, [he] was required to pick up [his] co-worker Lao (who is also [Plaintiff's] cousin)[8] and any other workers that would be working with [them] on that day." Martinez Matute Decl. at 2. Plaintiff asserts that "[a]fter picking up the van in the morning, [he] would then drive to the worksite," which was, more often than not, located in the District of Columbia. Opp'n at 3.[9]

---

[8] Lao's surname has not been provided.

[9] Plaintiff testified to a similar set of facts in deposition, albeit with some ambiguity. He testified that he was responsible for driving Mr. Shahparvari's company vehicle, a Chevrolet cargo van, although he was not paid for driving it. Martinez Matute Dep. Tr. at 39:5-10, 41:14-15. He

10

Plaintiff's attempt to modify his theory of FLSA individual coverage through his Opposition to Defendants' post-discovery motion for summary judgment is not permissible. "'Surprises such as new arguments or defense theories propagated after the completion of discovery and filing of summary judgment are wisely discouraged.'" *Benton I*, 121 F. Supp. 3d at 53 (quoting *Crest Hill Land Dev., L.L.C. v. City of Joliet*, 396 F.3d 801, 804 (7th Cir. 2005) (internal quotation omitted)); *see also Calvetti v. Antcliff*, 346 F. Supp. 2d 92, 107 (D.D.C. 2004) (finding that plaintiffs' attempt "to amend their complaint to properly allege a claim of conversion . . . is clearly impermissible" when the complaint alleged an untenable legal theory and plaintiffs then attempted to "salvage the claim" with new information in their opposition); *DSMC, Inc. v. Convera Corp.*, 479 F. Supp. 2d 68, 84 (D.D.C. 2007) (rejecting plaintiff's attempts to broaden claims and thereby amend the complaint through plaintiff's opposition to defendant's motion for summary judgment).

"The Court therefore will not consider [Plaintiff's] belated claim of individual coverage at this time." *Benton I*, 121 F. Supp. 3d at 54. Yet Plaintiff has described, albeit tardily, what might be a valid claim for individual coverage. Plaintiff states that on most workdays he was required to travel to Mr. Shahparvari's home in Rockville, Maryland—the headquarters of CNN Construction—to pick up a company van, filled with company materials and tools, before traveling to a worksite that was frequently located in D.C. Opp'n at 3; *see also*

---

testified that at the beginning of each workday, he drove the company van and picked up his cousin Lao, who lived in Silver Spring, Maryland, a ten-minute drive from Plaintiff's then residence in Silver Spring. *Id.* at 35:18-22, 36:1-4, 40:6-22. Plaintiff also stated that he drove to Mr. Shahparvari's home in Rockville; Plaintiff suggested that he did so in the mornings and afternoons. *Id.* at 41:3-7 and 42:12-15. When counsel for Defendants asked Plaintiff if he went anywhere with the company van "other than home, Lao's [home], . . . Home Depot, and the work site," Plaintiff replied: "No, never." *Id.* at 41:17-20. Plaintiff also testified that he is not seeking compensation for his travel time in this lawsuit. *Id.* at 41:3-13.

Compl. (listing the same mailing address for CNN and Mr. Shahparvari). This arrangement, if properly pleaded and supported in the record, supports an inference that Plaintiff traveled across state lines in the performance of his duties. *See Benton III*, 210 F. Supp. at 109-10 (denying summary judgment when plaintiff provided evidence that she frequently traveled to a D.C.-based organization's satellite office in Virginia; the Court observed that even if plaintiff traveled to Virginia from her home in Maryland, her travel was not commuting if she crossed state lines "in the performance of her duties" (quoting 29 C.F.R. § 776.12)).

Moreover, "as a general matter, 'when a party has a valid claim, he should recover on it regardless of his counsel's failure to perceive the true basis of the claim at the pleading stage, provided always that a late shift in the thrust of the case will not prejudice the other party in maintaining a defense upon the merits." *Benton I*, 121 F. Supp. 3d at 55 (quoting *Wiley v. Glassman*, 511 F.3d 151, 159 (D.C. Cir. 2007) (alterations omitted)). Therefore, the Court will dismiss without prejudice and permit Plaintiff to seek leave to amend the Complaint to allege a factual basis for his claim of individual coverage based on interstate travel within 21 days from the issuance of this decision.[10]

### B. Remaining State Law Claims

Defendants urge the Court to dismiss the D.C. and Maryland wage claims along with the federal suit. Defendants cite 28 U.S.C. § 1367(c), which states that after dismissing federal law claims, a district court may, in its discretion, decline supplemental jurisdiction and

---

[10] The Court observes that the law firm that represented the plaintiff in *Benton I* is the same law firm that represents Plaintiff here, although counsel is different. *Benton I* involved a plaintiff who failed to plead facts to support a claim of FLSA individual coverage. Defendants were awarded summary judgment and the *Benton* plaintiff was given leave to amend the complaint to allege a theory of coverage based on interstate travel. *Benton I*, 121 F. Supp. 3d at 54. The Court assumes that counsel is chagrinned that the same error has been made again.

dismiss all remaining state law claims. *Shekoyan v. Sibley Int'l*, 409 F.3d 414, 423 (D.C. Cir. 2005). In exercising such discretion, district courts consider judicial economy, convenience, comity, and fairness. *Id.* at 424. In the usual case, these factors point toward declining jurisdiction. *Id.* (citing *Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)); *see also Gibbs*, 383 U.S. at 726 ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."). Indeed, Plaintiff has not provided any independent basis for this Court's jurisdiction over the state law claims.

However, because the FLSA overtime claim will be dismissed without prejudice and might be timely refiled, Counts II, III, and IV will also be dismissed without prejudice.

## V. CONCLUSION

For the reasons stated, the Defendants' Motion for Summary Judgment, Dkt. 14, will be granted. A separate Order accompanies this Memorandum Opinion.

Date: November 26, 2019

ROSEMARY M. COLLYER
United States District Judge

13